**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

DOREEN A. [1]                                              Case No. 2:24-cv-4321

                    Plaintiff,                             Morrison, D.J.
        v.                                                Bowman, M.J.

COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.

**REPORT AND RECOMMENDATION**

Plaintiff Doreen A. filed this Social Security appeal in order to challenge the Defendant's finding that she is not disabled.  *See* 42 U.S.C. § 405(g).  Proceeding through counsel, Plaintiff presents one claim of error, which the Defendant disputes.  As explained below, the Administrative Law Judge (ALJ)'s finding of non-disability should be **AFFIRMED**, because it is supported by substantial evidence in the administrative record.

## I.  Summary of Administrative Record

On July 5, 2022, Plaintiff filed applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI) alleging she became disabled on June 5, 2022, based upon a combination of physical and mental impairments. After her claim was denied initially and upon reconsideration, Plaintiff requested an evidentiary hearing before an Administrative Law Judge ("ALJ").  A hearing was held before ALJ Matthew Winfrey in September 2023 (R. at 34-56). On November 17, 2023, the ALJ issued a written decision, concluding that Plaintiff was not disabled.  (Tr. 17-26).

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.  *See* General Order 22-01.

Plaintiff was born on September 19, 1964, and was 58 years old her alleged disability onset date.  (Tr. 59).  She has past relevant work as a recreation aide, a customer service representative, and a coffee shop manager and coffer shop counter attendant.

Based upon the record and testimony presented at the hearing, the ALJ found that Plaintiff had the following severe impairments: "necrotizing pneumonia; chronic obstructive pulmonary disease; asthma; and emphysema."  (Tr. 19). The ALJ concluded that none of Plaintiff's impairments alone or in combination met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subp. P, Appendix 1.  Despite these impairments, the ALJ determined that Plaintiff retains the RFC to perform light work subject to the following limitations:

> She can occasionally climb ramps and stairs, but is unable to climb ladders, ropes, or scaffolds; can occasionally kneel, crouch, and crawl; can have no exposure to concentrated irritants such as dust clouds, stagnant odors, fumes, or other pulmonary irritants; cannot balance; can have no exposure to workplace hazards such as unprotected heights and dangerous, unprotected moving mechanical parts; and no more than four hours of standing and/or walking during the workday.

(Tr. 22).

Based upon her RFC and testimony from the vocational expert, the ALJ concluded that Plaintiff could perform her past relevant work as a customer service representative. (Tr. 25).  Accordingly, the ALJ determined that Plaintiff is not under disability, as defined in the Social Security Regulations, and is not entitled to DIB and SSI.  *Id.*

The Appeals Council denied Plaintiff's request for review.  Therefore, the ALJ's decision stands as the Defendant's final determination.  On appeal to this Court, Plaintiff argues that the ALJ erred by failing to find any severe mental health impairment at step-two of the sequential evaluation and by failing to consider any such limitations in her RFC.

Upon close analysis, I conclude that Plaintiff's arguments are not well-taken.

I.      **Analysis**

**A.  Judicial Standard of Review**

To be eligible for benefits, a claimant must be under a "disability." *See* 42 U.S.C. §1382c(a).  Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies.  *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted).  In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978).  If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability.  *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).  As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion.... The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts.  If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.*  (citations omitted).

In considering an application for supplemental security income or for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); see also *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528-29 (6th Cir. 1997) (explaining sequential process); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left her unable to perform any job. 42 U.S.C. § 423(d)(1)(A).

**B. The ALJ's Decision is supported by Substantial Evidence**

Plaintiff argues that the ALJ erred in failing to find any severe mental health impairment at step-two of the sequential evaluation. This contention lacks merit.

For an impairment to be "severe," it must be expected to last more than 12 months and more than "minimally" affect a claimant's work ability. See 42 U.S.C. § 423(d)(1)(A);

*Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988) ("an impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience"). In his step two finding, the ALJ noted that Plaintiff also had several impairments he found to be non-severe. (Tr. 18). However, the ALJ found that there is no evidence that any of Plaintiff's non-severe impairments imposed more than minimal functional limitations on the Plaintiff's ability to perform work related activity. Accordingly, the undersigned finds that the ALJ's decision is substantially supported in this regard.

As noted above, the ALJ found several "severe" impairments including "necrotizing pneumonia; chronic obstructive pulmonary disease; asthma; and emphysema." (Tr. 19). The ALJ then considered other non-severe impairments including mental health impairments. Namely, the ALJ noted that Plaintiff sees a therapist for post-traumatic stress symptoms associated with her experience in the intensive care unit twice per month. (Tr. 20). She noted panic attacks around people, and wants to leave that situation to get away from them. She stated these feelings can last 10-15 minutes and that they occur about once or twice per day. The ALJ also considered that Plaintiff had been prescribed Buspar, Trazodone and Prozac for reported anxiety and insomnia symptoms. Id.

The ALJ further noted that counseling notes in April and May 2023 showed that Plaintiff reported being extremely irritable and angry about her health issues, with recommendations for calming/coping skill development. Mental status examination during a pulmonology visit on May 22, 2023 was normal. In July 2023, the claimant reported wanting to get off her medications, wanting to go back to work, and frustrated with her doctors and all the immunizations that they want her to have. (Tr. 20).

5

The ALJ then evaluated Plaintiff's mental impairments within the framework of the Paragraph B criteria.  Notably, the limitations identified in the 'paragraph B' criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process.  The ALJ found Plaintiff had mild limitations in all four domains.  (Tr. 20-21). The regulations explain that when the Commissioner finds that a claimant has none or mild limitations in her understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself then, generally, the Commissioner will find the mental impairment not severe. See 20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1).  In so concluding, the ALJ considered Plaintiff's conservative treatment history, hearing testimony, and normal clinical findings.  (Tr. 20-21).

Even if there was an error, then, the ALJ's failure to consider Plaintiff's mental health impairments as "severe" at Step 2 of the sequential analysis, will not necessarily require reversal or remand.  Namely, errors at step two of the sequential analysis will not necessarily require reversal, if the ALJ finds at least one "severe" impairment and therefore continues with the remaining steps in the sequential process. That is because in determining a plaintiff's residual functional capacity and ability to work later in the sequential process, the ALJ must consider even the impairments found not to be "severe" at step two. *See Maziarz v. Secretary of Health and Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987); 20 C.F.R. § 404.1520. Thus, regulations require an ALJ to "consider the limiting effects of all [the claimant's] impairment(s), even those that are not severe, in determining [the claimant's] residual functional capacity. Pain or other symptoms may cause a limitation of function beyond that which can be determined on the basis of the

6

anatomical, physiological or psychological abnormalities considered alone...." 20 C.F.R. § 404.1545(e).

Here, contrary to Plaintiff's claim, the ALJ also reasonably considered her impairments in combination.  As stated above, the ALJ found that Plaintiff had several severe impairments. (Tr. 19). He also discussed Plaintiff's non-severe impairments, including her mental health impairments.  In this regard, the ALJ's decision expressly states, in relevant part:

> Because the claimant's medically determinable mental impairments cause no more than "mild" limitation in any of the functional areas and the evidence does not otherwise indicate that there is more than a minimal limitation in the claimant's ability to do basic work activities, they are non-severe (20 CFR 404.1520a(d)(1) and 416.920a(d)(1)).
>
> The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment. The following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental function analysis.

(Tr.21).

Plaintiff argues, however, that the record shows that her anxiety is chronic in nature and treatment notes document that she is suffering from PTSD. Plaintiff also points to her testimony at the hearing wherein she stated that she experiences panic attacks once or twice a day when around people and has trouble sleeping. (Tr. 48).  She further testified that sleeping pills did not work. Plaintiff asserts that such cumulative evidence meets the de minimis standard for a severe impairment.  Plaintiff's contention lacks merit.

As noted by the Commissioner, the purpose of the severity inquiry at the second step of the sequential disability evaluation process is merely to screen out claims that are

medically groundless. *See Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) ("as this court has recognized, the severity requirement may still be employed as an administrative convenience to screen out claims that are 'totally groundless' solely from a medical standpoint."). Where an ALJ determines that one or more impairments is severe at step two and proceeds with the sequential process, the ALJ's failure to find additional severe impairments at step two does not constitute reversible error. *See Maziarz*, 837 F.2d at 244 (failure of Secretary to find that an impairment was severe was not reversible error because he found that claimant had other severe impairments); *Pompa v. Comm'r of Soc. Sec.*, 73 F. App'x 801, 803 (6th Cir. 2003) ("Because the ALJ found that Pompa had a severe impairment at step two of the analysis, the question of whether the ALJ characterized any other alleged impairment as severe or not severe is of little consequence."). Thus, Plaintiff has not established reversible error because the ALJ did not "screen out" her claim at step two. Rather, he found that Plaintiff had severe impairments at step two and proceeded to the remaining steps of the sequential evaluation process and explained his reasons for finding that Plaintiff did not have severe mental health impairments.

Although Plaintiff points to some abnormal findings or diagnoses in the record that could support finding greater limitations, this Court should defer to the ALJ's findings even if there is substantial evidence in the record that would have supported an opposite conclusion. *Ulman,* 693 F.3d at 713–14 ("As long as the ALJ cite[s] substantial, legitimate evidence to support his factual conclusions, we are not to second-guess."); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) ("As long as substantial evidence supports the Commissioner's decision, we must defer to it, even if there is substantial evidence in the record that would have supported an opposite conclusion.").

Plaintiff has not shown that it was outside the ALJ's permissible "zone of choice" that grants ALJs discretion to make findings without "interference by the courts." *Blakley*, 581 F.3d at 406. Even if a reviewing court would resolve the factual issues differently, when supported by substantial evidence, the Commissioner's decision must stand. *See Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001). Indeed, the Sixth Circuit upholds an ALJ's decision even where substantial evidence both contradicts and supports the decision. *Casey v. Sec'y of H.H.S.*, 987 F.2d 1230, 1235 (6th Cir. 1993). For these reasons, the ALJ's decision is substantially supported in this regard and should not be disturbed.

Accordingly, the undersigned finds that the ALJ adequately considered all of Plaintiff's conditions in determining her RFC and therefore did not err at step-two of the sequential evaluation.

### III.    Conclusion

For the reasons explained herein, **IT IS RECOMMENDED THAT** Defendant's decision is **SUPPORTED BY SUBSTANTIAL EVIDENCE**, and be **AFFIRMED**, and that this case be **CLOSED**.

*s/Stephanie K. Bowman*
Stephanie K. Bowman
United States Chief Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

DOREEN A.                                                 Case No. 2:24-cv-4321

           Plaintiff,                              Morrison, D.J.
    v.                                                    Bowman, M.J.


COMMISSIONER OF SOCIAL SECURITY,

           Defendant.


**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** after being served with a copy thereof.  That period may be extended further by the Court on timely motion by either side for an extension of time.  All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections.  A party shall respond to an opponent's objections within **FOURTEEN DAYS** after being served with a copy of those objections.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).